# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

JOE DURAN,

      Plaintiff,

    vs.                             Case No. CIV 13-0608 WPJ/SCY

HOME DEPOT USA, INC.,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO ENFORCE SETTLEMENT
## and
## ORDERING SETTLEMENT AMOUNT TO BE DEPOSITED IN COURT REGISTRY

THIS MATTER comes before the Court upon Defendant's Motion to Enforce Settlement, filed October 29, 2014 **(Doc. 44)**, following an evidentiary hearing in order to determine whether Plaintiff's former counsel, Richard Marquez, had his client's authorization to settle his case with Defendant ("Home Depot").   Having considered the oral and written evidence presented at the April 30, 2015 evidentiary hearing and having considered the parties' pleadings and the applicable law, the Court finds that Defendant's motion is well-taken and thus, is hereby GRANTED.

## BACKGROUND

Plaintiff filed a Complaint for Personal Injury on February 8, 2013 in the Second Judicial District Court, County of Bernalillo.   Defendant removed the case to federal court based on diversity jurisdiction.   Many of the details leading up to the dispute regarding whether Plaintiff Joe Duran ("Plaintiff") authorized Mr. Marquez to settle his case are set out in previous Court documents. *See* Doc. 74.   The issue presently before the Court arises from a letter of agreement

that was executed by counsel for both parties to memorialize terms of a settlement reached after negotiations between Mr. Arthur Smith, counsel for Home Depot and Plaintiff's former attorney, Mr. Richard Marquez, who was allowed to withdraw from the case. Doc. 69. Plaintiff is currently represented by Mr. Harry Jesse Jacobus.

Before embarking on the central questions in this case, the Court first addresses issues incidental to the evidence the Court will consider.

## DISCUSSION

### I.     *In Camera* Review of Redacted Attorney Notes Is Not Necessary

Plaintiff's attorney, Mr. Jacobus, was previously ordered by the Court to turn over to Defendant "any and all information and communications that relate to the sole issue of whether Plaintiff authorized former counsel to enter into settlement with Defendant." Defendant was not, however, entitled to work product material that concerned counsel's "mental impressions, conclusions, opinions or legal theories." Doc. 74 at 18. The file contained contemporaneous notes made by Mr. Marquez, and these were disclosed to Mr. Smith, counsel for Defendant, after being redacted for work product information. These notes were collectively offered and admitted as an exhibit at the hearing. Defendant urges the Court to review the attorney notes *in camera,* in their entirety, with the redacted portions, in order to ensure that the Court is fully apprised of any and all information that might pertain to settlement negotiations in this case. The Court finds that there will be no need to review the redacted portions since the information in the notes amply speak for themselves and sufficiently apprise the Court of what has taken place between Mr. Marquez and his client.

### II.    Polygraph Evidence

In addition to the testimony of Mr. Marquez and his client Mr. Duran, the Court heard testimony by Mr. Peter Pierangeli, a polygraph examiner who conducted a polygraph examination on Mr. Duran in December 2014.  *See* Ex. A (examination report).  Home Depot objected to the admission of Mr. Pierangeli's testimony based on the cautious approach by federal courts to this kind of testimony.  *See Keeler v. Aramark Healthcare Supp. Serv., LLC.,* 2011 U.S. Dist. LEXIS 18417 (D. Kan. 2011) (trial court will rarely abuse its discretion by refusing to admit polygraph evidence).

Before 1993, polygraph testimony offered for the purpose of showing that one is truthful was inadmissible, based on the general acceptance test for scientific evidence similar to the one set forth in *Frye v. United States*, 293 F. 1013, 1014 (D.C.Cir.1923).   However, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), the United States Supreme set forth the framework for analyzing the admissibility of Rule 702 evidence, superseding the *Frye* test. In *U.S. v. Call,* the Tenth Circuit held that polygraph examinations were to be treated like all other scientific evidence in that it must be subjected to the Rule 702 analysis set forth in *Daubert.* 129 F.3d 1402, 1405 (10th Cir. 1997).  At the same time, the court in *Call* discouraged any sort of "newfound enthusiasm for polygraph evidence," observing that polygraph examinations must still "survive the rigors" of Rule 403 as well as *Daubert*.  *U.S. v. Call,* 129 F.3d at 1405.

In *Daubert,* the United States Supreme Court explained the district courts' gatekeeping role to ensure that scientific testimony is both reliable and relevant. The Court has no issue with Mr. Pierangeli's qualifications to conduct polygraph examinations or to give testimony on the subject.  However, the Court is not convinced of the reliability of the evidence he presents based

on the polygraph results.[1]  *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (trial judge must determine whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline).  Mr. Duran was asked three "relevant questions" during the polygraph examination:

(1) Regarding whether or not you consented to any agreement with your attorney Richard Marquez Regarding Home Depot USA Inc.  Do you intend to answer truthfully each question I will ask you?

(2) Did you ever give attorney Richard Marquez a consent [sic] to settle your case with Home Depot USA Inc.?

(3)  Did you ever authorize attorney Richard Marquez to accept a settlement on your civil action with Home Depot USA Inc.?

Mr. Duran answered "yes" to the first question, and "no" to the second and third questions.

At the hearing, Mr. Pierangeli explained polygraph examinations, including the baseline preparation and underlying algorithms behind the testing.    A qualifying baseline was obtained, partly by asking Mr. Duran what number he had in mind, and matching the answer to a number to which the examiner was not privy.   The three questions that were asked during the testing were selected and formatted by Mr. Jacobus (Mr. Duran's attorney) and Mr. Pierangeli.  Mr. Duran was assured, both during the preparation and *four* times during the course of testing, that those three questions would be the only questions that would be asked of him during the course of testing.   The questions were not rearranged during the session in order to elicit any element of "surprise" nor were any unexpected questions asked other than the three questions that had been decided on beforehand.   Questions concerning any past untruthful conduct of Mr. Duran's were limited to whether Mr. Duran had ever told a serious lie or falsely accused someone of

---

[1]   A *Daubert* motion presented by Defendant might have been useful, but at the same time the Court realizes that this may have been unnecessary as preparation for an evidentiary hearing on a motion to enforce a settlement.

something serious before 2009, and if he remembered telling a serious lie prior to 2009.  Mr. Pierangeli responded to these observations during cross-examination by noting that the selection and order of questions were an integral part of the polygraph testing.   Also, in response to Defendant's observation that polygraph examinations do not usually include the presence of opposing counsel and that Home Depot was also not present during Mr. Duran's examination, Mr. Pierangeli explained that the presence of an adversary could impact the results of the test.

Plaintiff is putting this evidence forward to speak for his credibility, but the Court finds that the methodology used does not pass *Daubert's* reliability standards for that purpose.  The Court is not convinced that Plaintiff's performance on the polygraph was not influenced by the manner of the question selection, by the testing setup and rehearsal, and by the manner in which the questions were asked.   Unlike cross-examination, where Mr. Duran could not know the exact questions would be asked by counsel for the opposing party, he knew exactly what three questions would be put to him during the polygraph examination because the questions had been selected and designed by his own attorney and the polygraph examiner.   The absence of any input, much less presence of, opposing counsel at any time during the examination virtually eliminated any challenge to whether Plaintiff's responses indicated someone who was simply comfortable not telling the truth.

Expert testimony must also meet the probative requirements of Fed.R.Evid. 403.  *U.S. v. Call*, 129 F.3d at 1405 (polygraph evidence must still meet requirement of Rule 403); *see also Keeler,* 2011 U.S. Dist. LEXIS 18417, *2 (finding polygraph examination evidence prejudicial under Rule 403, given the fact that the examinations were conducted with no defendant representative present).   In this case and under these circumstances, the Court finds that the polygraph evidence offered has little probative value and is substantially outweighed by the

danger of unfair prejudice to an impartial assessment of credibility by the fact finder—which in this case is the Court. For these reasons, the Court finds that the polygraph evidence is not reliable under *Daubert* standards and does not meet Rule 403's balancing requirements.

## III.   Legal Standard

The question before the Court is whether Mr. Duran authorized Mr. Marquez to settle his case. Here, as the party seeking enforcement of a settlement agreement, Home Depot "has the burden of establishing assent by the opposing party." *Augustus v. John Williams & Assoc., Inc.,* 92 N.M. 437, 439 (1979), cited in *Gomez v. Jones-Wilson,* 294 P.3d 1269 (N.M. 2013). An attorney "may not settle a client's claim without specific authorization from the client and if there is an issue as to whether there was authorization, the party seeking enforcement of an alleged settlement agreement has the burden of establishing authorization." *Gomez*, 294 P.3d at 1273.

While a client may authorize his or her attorney to settle a claim, "such authority must be clear and unequivocal." *Id*. (internal quotation marks and citation omitted). "An unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client." *Id*. (internal quotation marks and citation omitted). The agreement cannot be enforced if Plaintiff did not authorize Mr. Marquez to accept the settlement. *See Bolles v. Smith,* 92 N.M. 524 at 526 (1979) (there was no enforceable agreement to settle where attorney did not have specific authority to settle), cited in *Gomez,* 294 P.3d at 1273 ("an unauthorized compromise, executed by an attorney, unless subsequently ratified by his client, is of no effect and may be repudiated or ignored and treated as a nullity by the client"). On the other hand, if Mr. Duran did authorize his attorney to settle, and is now is simply changing his mind, then the agreement is binding. *See Gonzales v. Atnip,* 102

N.M. 194, 200 (Ct.App. 1984), cited in *Gomez,* 294 P.3d at 1273 (where it was undisputed that plaintiff had specifically authorized his attorney to enter into the settlement agreement, the settlement was binding on plaintiff).

In order for the Court to find that the agreement should be enforced, then Home Depot must present some evidence of any conduct or communication by Plaintiff which gave Mr. Marquez the authority to settle.  This evidence must be "clear and unequivocal." *Gomez,* 294 P.3d at 1273.  The "clear and convincing" evidence standard requires proof stronger than a mere "preponderance" and yet something less than "beyond a reasonable doubt." *State of N.M. ex rel. CYFD v. Hector C.*, 144 N.M. 222, 226 (N.M.App.,2008). For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true.

## IV.    Analysis

Home Depot called as its primary witness Plaintiff's former counsel, Mr. Marquez, who offered testimony based on his detailed handwritten notes from Mr. Duran's client file.  The handwritten notes were made contemporaneously for the purpose of keeping track of case activity for Mr. Marquez' own use as well as to serve as a record in the event he needed to substantiate his actions—such as this very instance.    The attorney notes were admitted at the hearing as Exhibit 1. The Court also admitted other exhibits, among which was a phone call log for calls made to and from Mr. Marquez' office and cell phones and which supports references to phone calls in Mr. Marquez' notes.  The phone log, admitted as Exhibit 15, shows calls made to Plaintiff's number from May to mid-September 2014.  Exhibit 3 is a chain of emails showing a

back-and-forth exchange with offers and counter-offers between Mr. Marquez and Mr. Smith which track Mr. Marquez' notes.

A.     Evidence Based on Attorney Notes and Phone Calls

The negotiation started with a demand to Home Depot for $300,000.  Ex. 1 at 0006; Ex. 2.[2]  Mr. Marquez' notes chronicle the negotiation process.  On June 5, 2014, Mr. Marquez wrote a letter to Mr. Smith with the demand for $300,000, and also wrote a letter to Plaintiff regarding the demand to Home Depot.  He also advised Plaintiff of his assessment of the true value of the case, which was somewhere in the $75,000/$25,000 range (or "bracket" as Mr. Marquez stated he explained the concept to Mr. Duran).   Plaintiff disagreed about the amount.  On June 12th, Mr. Marquez told Plaintiff in a phone call that it could take 30 days for Home Depot to respond to the demand.   On June 24th, Mr. Marquez called Mr. Duran to advise him of a motion he was planning to file, to which Plaintiff agreed, and again advised Plaintiff of the $75,000/$25,000 range which Mr. Marquez, as a seasoned Plaintiff's personal injury attorney, determined to be the settlement value of Plaintiff's case.

A July 10 note states that Mr. Marquez had received an offer from Mr. Smith for $20,000.  Mr. Marquez contacted Plaintiff and reviewed the offer with him.   Ex. 1 at 0008; Ex. 15 at 8.  He also discussed strategy to keep Home Depot interested.   With Mr. Duran's consent, Mr. Marquez made a counter offer of $275,000, deliberately staying above $200,000 to "see where things go." Ex. 1 at 0008.   Mr. Smith responded with an offer of $25,000, to which Mr. Marquez countered with $215,000.

On July 11th, Mr. Duran told Mr. Marquez he agreed to go to down to $190,000 in order to raise the working range of negotiations to somewhere between $50,000 and $75,000.   In

---

[2]  Exhibit 1, Mr. Marquez' notes, was admitted at the hearing and provides support for the subsequent description of Mr. Marquez' actions and communications with Mr. Duran.  Because the notes are arranged and clearly marked according to date, the Court does not identify each of the events described with a citation to the notes.

response to Mr. Marquez' offer of $190,000, Home Depot counter-offered with $27,500.   Ex. 1 at 0009; Ex. 3 at 6-7.   On July 15th, Mr. Smith informed Mr. Marquez that Home Depot would "never go six figures."  Ex. 1 at 0009.  That same day, Mr. Marquez also spoke with Mr. Duran, who authorized an amount of $142,500.   In an email, Mr. Smith informed Mr. Marquez that he was authorized to offer $31,000.  Ex. 3 at 4.   When advised of this offer, Plaintiff asked Mr. Marquez how much he would receive if he settled for $31,000.  Ex. 1 at 0009.

On July 16th, Mr. Marquez spoke with Mr. Smith, discussing the range of settlement, and received an offer from Mr. Smith for $32,500.  Mr. Marquez then spoke with Plaintiff that same day, going over the case again and discussing various emails exchanged between Mr. Marquez and Mr. Smith.  He told Plaintiff about an email from Mr. Smith which stated that if Plaintiff "goes to $80,000, Home Depot will go to $40,000."  Ex. 1 at 0009; Ex. 3 at 2.   Based on the email, Mr. Marquez informed Plaintiff that it appeared from his conversations with opposing counsel that Home Depot "would settle at $60,000."  Ex. 1 at 0010.

Mr. Marquez spoke with Mr. Duran on July 17th.   During this phone conversation, Plaintiff asked Mr. Marquez to try to get $75,000 by using a bracket with a maximum range of $100,000 if Home Depot offered $50,000.  Mr. Marquez told his client that he did not believe Home Depot would settle for $75,000 and that based on his conversations with Mr. Smith and the bracket that he was offering, Home Depot was "signaling" that it would settle the case at $60,000.   Mr. Marquez told Mr. Duran that he would present the $100,000/$50,000 bracket he wanted but it was likely the bracket would be rejected.  Ex. 1 at 0010.   Home Depot did reject this bracket range, advising Mr. Marquez that it would go to $45,000 if Plaintiff amended his demand to $60,000 instead of $100,000.  Ex. 3 at 1.

A July 18th note states that Mr. Duran told Mr. Marquez that he "wanted to settle the case and get it done."  Ex. 1 at 0010.    Plaintiff said he wanted to go with the $80,000/$40,000 in order to come out with $60,000, and told Mr. Marquez to "settle the case for $60,000." Plaintiff also asked how much he would come out with in a $60,000 settlement and Mr. Marquez told him he would receive about $36,102.  Mr. Duran said that it sounded "good to him."  Ex. 1 at 0011.   Mr. Marquez emailed and called Mr. Smith to advise him that Plaintiff would go to the $80,000/ $40,000 range, and Mr. Smith said he believed he would have authority to settle for $60,000 based on his conversations with the Home Depot insurance adjuster.

On July 21st, Plaintiff wanted to know whether Home Depot had agreed to settle the case at $60,000.  Ex. 1 at 0011.   Mr. Smith called Plaintiff on July 23rd and told him that settlement was confirmed for $60,000, and reviewed the process for finalizing the settlement.  Plaintiff called back that same day and again asked Mr. Marquez how much he would get out of the $60,000, to which Mr. Marquez responded that he would get over $36,000 after fees.[3]  At the end of July, Mr. Marquez' notes indicate that he received a signed settlement letter from Home Depot as well as release forms to be signed by Plaintiff.   On July 24th, Mr.  Marquez sent Plaintiff a letter along with a confirmation letter from Mr. Smith.

Based on Mr. Marquez' notes, there were no communications between Mr. Marquez and his client from July 23rd until August 27, 2014, when Mr. Marquez left a message on Mr. Duran's phone to inform him that he had received the release form from Mr. Smith by email. Plaintiff called back that day and told Mr. Marquez that he had changed his mind and did not want to settle the case.   He also stated that since he had not signed anything, he did not have to

---

[3] At this point in the notes, there are redactions as there are throughout the notes.   Mr. Marquez testified that the $36,000 figure was what was left not only after fees were taken out, but also subrogation amounts for Plaintiff's medical bills; and that he apprised Plaintiff of the basis for the amounts taken out of the settlement amount, including the subrogation amount.

accept the $60,000 offer.   Mr. Duran explained that he had been thinking it over and "wanted more money."  Ex. 1 at 0013.  Mr. Marquez told him it was too late to change his mind, and warned Plaintiff that Home Depot would likely file a motion to enforce the settlement.  *See* Ex. 8 (letter to Plaintiff).  He also advised Plaintiff that if he backed out of the settlement agreement, he would withdraw from representing Plaintiff.   Plaintiff "got mad," said he wanted more money, and hung up.

Mr. Marquez followed up with a letter to Plaintiff, giving him until October 1, 2014 to sign the release.  When the release wasn't signed, Mr. Marquez called Mr. Smith to advise him that Plaintiff was backing out of the agreement; Mr. Marquez' October 1st note states that he would file a motion to withdraw, which the Court granted.[4]   Home Depot filed the instant motion on October 29, 2014.

The Court finds Mr. Marquez' testimony to be entirely credible.  The Court is persuaded, based on Mr. Marquez' testimony and his detailed notes, that Mr. Marquez based his assessment of the case on its strengths and weaknesses, based on his 18 years of experience handling these matters.  He informed Plaintiff of his assessment of the case; kept Plaintiff "in the loop" about the progress of settlement negotiations; did not take any actions in these negotiations without Plaintiff's consent; and finally settled the case for $60,000 with Plaintiff's approval.  There is no indication that the case was settled for that amount because Mr. Marquez wanted to settle fast or because he lost interest; instead, the evidence shows that Mr. Marquez worked zealously on behalf of his client's interest in getting a good settlement for him.   Further, Mr. Marquez was mindful about what his client would get from the settlement.  More than once he provided Plaintiff with information on what amount Plaintiff would receive from a $60,000 negotiated

---

[4]    Mr. Marquez' motion to withdraw was initially denied for failure to comply with the local rule governing withdrawal of attorneys (Doc. 43), but was later granted (Doc. 69) on the condition that Mr. Marquez remain involved in this case until the motion to enforce was ruled on by the Court.

amount.    Mr. Marquez' credibility is bolstered by his responses to the Court's inquiry about whether fees and subrogation amounts were considered in the case assessment and in explaining how he arrived at a workable settlement range.    Mr. Marquez stated that in coming to his initial assessment of a $75,000/$25,000 settlement range, he had calculated for subrogation for medical bills as well as his attorney fees.    He had also negotiated the medical bills down to a minimal amount for subrogation purposes, and had included deductions for this and for his own fees when informing Plaintiff of final settlement amounts in order to allow Plaintiff to make an informed decision on settlement amounts.

B.    Evidence Presented by Plaintiff

Mr.  Duran's testimony consisted of a denial of having given any consent to settle the case.    He testified that Mr. Marquez informed him about the amounts being offered by Home Depot, but was never informed about the counteroffers Mr. Marquez presented.    Mr. Duran testified that he remembered Mr. Marquez telling him that Home Depot would be willing to settle for $60,000, but he told Mr. Marquez only that he would consider it because he thought the amount was too low.  Mr. Duran denied calling back Mr. Marquez to tell him that he had changed his mind about the settlement.

While the Court has found Mr. Marquez' testimony to be credible, the Court finds that Mr. Duran's testimony is not, for several reasons.  First, in order to believe Mr. Duran, one would have to reject Mr. Marquez' detailed attorney notes, spanning a three-month period, as being a sham. The Court finds no reason to do so because Marquez' notes commemorating his conversations with Plaintiff appear to be genuine and contemporaneous.    Second, Plaintiff's testimony contained inconsistencies that are somewhat troublesome.  It strains credulity to believe that Mr. Marquez would advise Plaintiff of the "lows" being offered by Home Depot

12

(conceded by Mr. Duran), but that he would not mention anything about what he suggested as counter-offers to those amounts.   Moreover, Plaintiff testified that he told Mr. Marquez that he thought $60,000 was too low, which directly contradicts Plaintiff's statement that Mr. Marquez never advised him of any of the counter-offers presented to Home Depot.

Plaintiff also claimed he never received any of the letters sent to him by Mr. Marquez, which would include the letter Mr. Marquez sent to Plaintiff enclosing Home Depot's letter confirming the settlement.   Plaintiff's position seems rather odd and extreme, given that there is no evidence that Mr. Marquez had an incorrect address for Plaintiff and there was no testimony by Mr. Marquez that any of the letters had been returned.    Also, Mr. Marquez testified that Plaintiff had mentioned the July 24th letter confirming the settlement when Plaintiff returned his call and told him he had changed his mind about the settlement.

Plaintiff contends that inconsistencies exist in Mr. Marquez' testimony, but these are barely worth mentioning.   One is a discrepancy in the dates in which Mr. Marquez received the release from Home Depot and the date he called Plaintiff about receiving the release.  According to the notes, Mr. Marquez called Plaintiff on August 27, 2014.  Ex. 1 at 0013.   However, according to a letter to Plaintiff, Mr. Marquez called Plaintiff on August 28, 2014, and not August 27, 2014.  *See* Ex. 8.  Thus, Mr. Marquez called Plaintiff the day *after* receiving the release, and not the same day.   The other discrepancy observed by Plaintiff's counsel is that there is no entry on the phone call log to support the July 15, 2014 note stating that he had spoken with Mr. Duran twice.   *See* Ex. 1 at 0009.   Mr. Marquez responded to the discrepancy by recollecting that Mr. Duran had visited his office during that visit, and so the note could have referred to a visit instead of a phone call.   The Court finds that a one-day error in the timing of a phone call and letter, and a missing entry for a phone call that could have been a visit does not

13

alter the weight of the evidence or affect Mr. Marquez' credibility in any way, in light of the extensive volume of attorney notes which do corroborate Mr. Marquez' testimony and the number of phone calls which do correlate with the notes.

On the other hand, Mr. Duran offered only the polygraph evidence in addition to his testimony, and the Court has found that this evidence is not admissible under *Daubert* standards. However, even if this evidence were found to be admissible, it still would not persuade the Court to find that Mr. Duran's testimony was credible.   The Court's duty here is to weigh the evidence presented by both sides.   The Court does not consider the responses given by Mr. Duran during the polygraph exam to be dispositive on the issue of credibility, or to be a suitable substitute for the Court's own assessment of the evidence which includes the credibility of a witness.   *See U.S. v. Call,* 129 F.3d at 1406 (polygraph is "often excluded because it usurps a critical function of the [factfinder] and because it is not helpful to the [factfinder], which is capable of making its own determination regarding credibility").   Plaintiff knew the exact form in which the questions would be asked and was given frequent assurances throughout the testing that only these and no other questions would be asked.   The entire process was set up to avoid any surprise on the part of Mr. Duran and would seem to eliminate, or at least severely minimize, any chance of Mr. Duran's responses showing dissembling in the event Mr. Duran was not telling the truth.

## CONCLUSION

In sum, the Court finds and concludes that Defendant Home Depot has shown, with clear and convincing evidence, that Mr. Duran authorized his attorney Mr. Marquez to settle his lawsuit against Home Depot, the underlying lawsuit in this action, for $60,000.   It is likely that Mr. Duran had a change of heart during the month of August 2014 while waiting for the settlement papers to be finalized, but this is not a basis to repudiate an otherwise binding

settlement.   The Court finds that Mr. Marquez' testimony is credible, and that the supporting evidence is considerable and corroborative of that testimony.  All of this weighs heavily against the testimony of Mr. Duran, which the Court finds to have questionable credibility, as well as the polygraph evidence which the Court has found to be unreliable under *Daubert* and which does not meet the balancing requirements of Rule 403.  In addition, the Court also finds that the polygraph results would not change the Court's credibility findings even if this evidence were to be considered.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Enforce Settlement (**Doc. 44**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant Home Depot shall, **within thirty (30) days of the entry of this Order**, deposit the agreed-on settlement amount of $60,000 in the Court Registry;

**IT IS FURTHER ORDERED** that **within thirty (30) days** following the deposit of the settlement amount in the Court Registry, Home Depot shall provide Mr. Duran through his current counsel, Mr. Jacobus, with a release form to be signed; and upon the signing of the release form by Plaintiff, the Court shall enter an Order ordering that the Court Clerk disburse the settlement amount to Plaintiff after determining the validity and amount(s) of any competing claims to said settlement proceeds;

**IT IS FURTHER ORDERED** that Mr. Marquez assert his charging lien formally against the settlement amount within **thirty (30) days** of the entry of this Order; and Mr. Jacobus, Plaintiff's current counsel, shall have **fifteen (15) days** from the assertion of the charging lien to file any objections to the amount of the lien including specific reasons for those objections;

**IT IS FINALLY ORDERED** that Home Depot shall advise the Court by formal pleading when the release form is signed, at which point the Court will enter a disbursement Order[5] after having resolved any issues pertaining to Mr. Marquez' charging lien and any other potential claims to the settlement proceeds in the Court's Registry.

A Rule 58 Order of Judgment shall issue separately.

_____
UNITED STATES DISTRICT JUDGE

---

[5] In the event Mr. Duran does not sign the release, his portion of the settlement funds will not be disbursed to him.