IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOE DURAN,

       Plaintiff,

      vs.                                    Case No. CIV 13-0608 WPJ/SCY

HOME DEPOT USA, INC.,

       Defendant.

**MEMORANDUM OPINION AND ORDER
AWARDING FEES AND COSTS IN ATTORNEY CHARGING LIEN, MINUS
COPYING COSTS IN THE AMOUNT OF $535.00**

THIS MATTER comes before the Court upon a Notice of Amended Attorney Charging Lien, filed May 7, 2015 **(Doc. 79).** Most of the litigation in this case concerns whether Plaintiff authorized his attorney to settle this case. The Court has already ruled and issued an opinion concluding that Plaintiff authorized his former attorney Richard R. Marquez to settle his lawsuit against Home Depot for the sum of $60,000. Doc. 77 at 14. This Order addresses Mr. Marquez's entitlement to fees and costs incurred during Plaintiff's representation based on a contingency fee agreement. Having reviewed the parties' briefs and applicable law, the Court finds that Mr. Marquez is entitled to the amount listed in the Amended Attorney Charging Lien, which is the amount of $22,267.24, minus the amount of $535.00 for the cost of copying Plaintiff's client file, leaving an award of $21,732.24.

## BACKGROUND

Plaintiff filed this personal injury case in February 8, 2013 in the Second Judicial District Court, County of Bernalillo. Defendant Home Depot removed the case to federal court based on diversity jurisdiction. On August 13, 2014, while still in the discovery stage, Home Depot

advised the Court that the parties had resolved the case. Doc. 40. In mid-July 2014, a letter of agreement was executed by counsel for both parties to memorialize the terms of a settlement reached after negotiations between Plaintiff's counsel at the time, Richard Marquez, Esq. and Mr. Duran. See Doc. 44, Ex. A (July 18, 2014 letter by Home Depot confirming settlement). Plaintiff has taken the position that he never authorized Mr. Marquez to settle his case. Mr. Marquez was allowed to withdraw from the case, Doc. 69, and Plaintiff is currently represented by Mr. Harry Jesse Jacobus.

An evidentiary hearing was held on the matter on April 30, 2015 (Doc. 76, Clerk's Minutes). The Court determined, after hearing evidence and testimony, including testimony from both Plaintiff and Mr. Marquez, that Home Depot presented clear and convincing evidence that Dr. Duran authorized Mr. Marquez to settle his lawsuit against Home Depot for $60,000. Having found in favor of Defendant on the settlement issue, the Court ordered Home Depot to deposit the agreed-on settlement amount of $60,000 in the Court's registry within thirty (30) days of the entry of the Court's order, pending Plaintiff's signing of a release form. Doc. 77 at 15. Plaintiff subsequently filed a motion for reconsideration, which the Court denied on June 9, 2015. Doc. 86. On June 23, 2015, Home Depot filed an unopposed motion to extend the Court's deadline in which to deposit the settlement amount in the Court's registry to July 19, 2015. Defendant made this request in order to avoid having to deposit the settlement proceeds until it was confirmed that the case would not be appealed, and the judgment of the trial court was final. Doc. 87. The Court granted the motion. Doc. 88. On July 13, 2015, Home Depot deposited an amount of $60,000 in the Court registry.[1]

---

[1] It would have been helpful to the Court had Home Depot filed a notice that it had complied with the Court's Order upon depositing the funds. Instead, the Court discovered that the deposit was made by making inquiries to the Court's Financial Department.

Mr. Marquez has filed a Notice of Amended Charging Lien in the amount of $22,267.24 for his work on this case. Doc. 79. Mr. Jacobus has filed objections to the Notice and Mr. Marquez filed a reply to those objections. *See* Docs. 80 & 81. It is not disputed that Plaintiff signed a one-third Contingency Retainer Agreement which also makes Plaintiff responsible for costs for printing, copying, postage and other costs. Ex. A. The contingency agreement also allowed for the filing of a charging lien for any unpaid fees and costs incurred by that attorney's representation as well as for efforts to collect the fees and costs incurred.

I.   **Jurisdiction Over the Charging Lien**

Mr. Jacobus argues that the Court should refrain from exercising supplemental jurisdiction over this attorney charging lien dispute for two reasons: first, because this lien issue raises a complex issue of state law and second, because he fears that findings on the lien issue would be dispositive of Plaintiff's claims against Mr. Marquez in a legal malpractice case that Plaintiff hopes to bring against Mr. Marquez. Neither argument has any merit, but at least Mr. Jacobus recognizes that this Court does have discretion to exercise supplemental jurisdiction over charging lien matters where the lien is filed with respect to matters litigated in this Court. *See Albuquerque Technical Vocational Institute v. General Meters Corp.*, 17 Fed.Appx. 870, 871, 2001 WL 951348, at *1 (10th Cir. 2001) (in diversity lawsuit, district court had jurisdiction to consider attorney lien under 28 U.S.C. § 1367); *Garrick v. Weaver,* 888 F.2d 687, 690 (10th Cir. 1989) (court has ancillary jurisdiction to determine legal fees a party to a lawsuit owes its attorney *with respect to the work done in the suit being litigated*") (emphasis in original) (citing *Jenkins v. Weinsheink,* 670 F.2d 915, 918 (10th Cir. 1982) (district court had jurisdiction to

decide whether attorney has a retaining lien where the files were pertinent to the litigation before the federal district judge).[2]

There is no reason to decline jurisdiction over the charging lien issue because of the complexity of the state law involved, nor does Mr. Jacobus identify any specifics about the relevant law that is particularly thorny.  This is a relatively straightforward issue.  The Court has addressed numerous attorney fee award matters which were much more complex by comparison.  Therefore, the Court will exercise jurisdiction over the charging lien issue.   Also, Plaintiff's claim that the Court's decision on this matter will foreclose his ability to develop evidence and prove that Mr. Marquez committed malpractice makes no sense at all.  The Court took pains to distinguish between the only matter which was before it—whether there was a settlement agreement and whether it should be enforced—and any existence of a breach of duty that may have been committed by Mr. Marquez:

> The Court is not going to allow Plaintiff to morph his personal injury case against Home Depot into a legal malpractice case against his former counsel. The Court will not consider or make findings on any issues related to whether Plaintiff's former counsel breached his duties of legal representation, recognizing that Plaintiff is not precluded from filing a separate lawsuit on that issue at a later time.

Doc. 74 at 18.  This language made it abundantly clear that Plaintiff was free to pursue a malpractice lawsuit against Mr. Marquez in the future and that it had no bearing on the Court's decision as to whether there was a binding settlement agreement and whether it should be enforced.

---

[2]  *See also Computer One, Inc. v. Grisham & Lawless, P.A,* 144 N.M. 424, 427 (2008) (after finding that plaintiff had given his attorney sufficient authority to settle the case, the court considered objections filed to the charging lien in order to determine the reasonableness of the fees); *U.S. v. Board of County Com'rs of the County of Dona Ana, N.M.*, 730 F.Supp.2d 1327, 1337 (D.N.M.,2010) (An attorney's charging lien "attaches to the client's cause of action, verdict and judgment, and the proceeds thereof) (citation omitted); *U.S. v. 36.06 Acres of Land*, 70 F.Supp.2d 1272 (D.N.M.,1999)(court considered motion to enforce charging lien following trial on related litigation);*Vincoy v. U.S.*, 1999 WL 1581414, at *2 (D.N.M.,1999) (court considered post-settlement dispute of fees in charging lien, and entered order granting 100% of the fees earned in the matter).

> Courts in New Mexico have defined the attorney charging lien as:
>
> the right of an attorney or solicitor to recover his fees and money expended on behalf of his client from a fund recovered by his efforts, and also the right to have the court interfere to prevent payment by the judgment debtor to the creditor in fraud of his right to the same, and also to prevent or set aside assignments or settlements made in fraud of his right.

*Sowder v. Sowder*, 127 N.M. 114, 117 (N.M.App.,1999); *accord, Northern Pueblos Enters. v. Montgomery*, 98 N.M. 47, 49 (1982). Under New Mexico law, four requirements must be met for an attorney to recover fees under a lien. First, there must be a valid contract between the attorney and the client. *Sowder*, 127 N.M. at 117. Second, the fund to which the lien attaches must have been recovered by the efforts of the attorney. *Id.* Third, the attorney must give notice to all parties involved in the litigation of the intent to assert a lien against any judgment. See id. Finally, the assertion of the lien by the attorney must be timely. *Id.* at 118. In addition, a court may inquire into the reasonableness of the requested fee for purposes of enforcing the lien. *Northern Pueblos Enters,* 98 N.M. at 47 (1982) (cited in *Albuquerque Tech. Voc. Inst. v. Gen. Meters Corp.,* 2001 WL 951348, at *4 (10th Cir. 2001). Here, the only issue raised by Plaintiff concerns the reasonableness of the requested fee.

## II.     Whether Lien Amount Should Be Reduced

Plaintiff claims that the lien amount should be reduced, although he does not suggest a reduction amount, because of the subrogation amount offered by Presbyterian Hospital, and also because of alleged deficiencies in Mr. Marquez's case preparation.

A.     <u>Subrogation</u>

Plaintiff contends that Presbyterian had offered to reduce its subrogation right from more than $28,000 to $2,500, on the basis of a $20,000 settlement, and that Presbyterian Health Plan ("Presbyterian") demanded to increase the subrogation amount to more than $4,000 once it

5

learned that the case had settled for $60,000.  Thus, as Plaintiff views it, Mr. Marquez should not get credit for negotiating Plaintiff's subrogation obligations down to $2,500 by making a misstatement about the settlement amount to Presbyterian.  Plaintiff offers an affidavit by Alison Kelly, who the Court assumes is a Presbyterian employee, who states that she spoke on the phone with Mr. Marquez on July 11, 2014.[3]  Ms. Kelly states that she did not recall the exact language of the conversation, but stated that her notes indicated that based on her conversation and assuming a settlement amount of $20,000, she informed Mr. Marquez that Presbyterian would reduce its subrogation rights to $2,500.   Ex. A, ¶¶ 2-4.  The Affidavit also states that when Plaintiff became represented by Mr. Jacobus, she learned that the settlement amount was $60,000 and not $20,000, in which case she informed Mr. Jacobus that Presbyterian would accept an amount of $4097.17 (and not $2,500) for reimbursement.

    Mr. Marquez contends that the Affidavit does not support a reduction in his fee.  He points out that Ms. Kelly stated in her affidavit that she did not recall the exact language of the July 11, 2014 conversation between her and Mr. Marquez, and that her notes provide no detail of the conversation.   However, there appears to be enough detail in the note to link the $2,500 reimbursement with a settlement number of $20,000.  According to the Affidavit, Ms. Kelly's note stated: "RTC (Return Telephone Call) from attorney/case will settle for $20K/tricky slip and fall case/member had pre-ex condition/offers $2,500 reimbursement."  Ex. A, ¶ 3.  Mr. Marquez also offers a letter he received from Ms. Kelly on July 11, 2014 which confirms the $2,500 reimbursement amount of the subrogation claim (Ex. C) and also a letter dated February 6, 2015 from Mr. Marquez to Ms. Kelly advising that he was no longer representing Plaintiff but thanking Ms. Kelly for agreeing to accept $2,500 in satisfaction of Presbyterian's subrogation

---

[3]  Mr. Jacobus obtained this affidavit after the Court granted Home Depot's motion to enforce the settlement agreement, and made inquiries to find out if Presybterian would still honor its prior subrogation agreement.  Doc. 80 at 5.

claim (Ex. D).  However, neither of these exhibits mentions a specific dollar figure for the settlement amount, as opposed to Ms. Kelly's notes, mentioned in her Affidavit, which links the $2,500 subrogation figure to a "20K" settlement figure."  Ex. A, ¶ 3.

Nevertheless, the Court does not find Ms. Kelly's Affidavit to be the game-changer Mr. Jacobus no doubt hopes it to be.  As Mr. Marquez notes, Presbyterian has a financial interest in the dispute between Plaintiff and himself, and it is significant that Presbyterian decided to change its subrogation lien amount only when Plaintiff's current counsel became involved and inserted himself into the issue by contacting Ms. Kelly.  Until that time, even as late as February 2015, Presbyterian agreed to accept $2,500 as the subrogation amount and did not change course until three and a half months later.  It is not a huge stretch to view Presbyterian's change of heart as Mr. Marquez sees it: as part of preparatory efforts by Mr. Jacobus to build a malpractice case against Mr. Marquez at some later date.  The Court may confidently make this conclusion because the Court had inquired into the subrogation issue during the evidentiary hearing on Defendant's motion to enforce, and had found Mr. Marquez's testimony to be credible.  Mr. Marquez had testified—and the testimony was supported by his notes—that he informed Plaintiff he would receive $36,000 after discounting for his fees under the contingency arrangement as well as for the $2,500 subrogation amount.  *See* Doc. 77 at 10, n.3; Doc. 81 (Hrg. Transcript) at 41:5-10.  Moreover, the difference in the subrogation amount, $1,517.17, is not substantial enough to abandon the one-third contingency arrangement that was in place between Plaintiff and Mr. Marquez because even the inflated subrogation amount is a fraction of the original subrogation claim, which was $28,279.26.

B.     Amount of Contingency Fee

Plaintiff also argues that the charging lien amount should be reduced based on Mr. Marquez's deficient preparation of Plaintiff's case for trial.  Plaintiff claims that Mr. Marquez did very little to help Plaintiff's case on the merits, focusing on Mr. ss lack of efforts to pursue discovery, and in particular noting that Mr. Marquez had failed to meet Rule 26(a)(2)(C)'s requirements for expert disclosure.  It is true that the Court granted Home Depot's motion for sanctions on this issue by finding Plaintiff's expert disclosures to be inadequate, but the Court denied Defendant's request to strike Plaintiff's expert disclosure. Doc. 39 at 9 (Court's Order). The Court fails to see why Plaintiff should rely on this Order to argue that Mr. Marquez's fee amount should be reduced, when  that Order did not preclude Plaintiff's use of experts at all but rather allowed Plaintiff additional time to amend his Rule 26 disclosures.  *Id.*

In another attempt to show that Mr. Marquez's pre-trial preparation was inadequate, Mr. Jacobus states that he recently met with one of Plaintiff's other treating physicians, Dr. Manual Gurule, who advised him that he would prepare a report giving Plaintiff a favorable causation opinion.[4]  Again, the Court fails to see the promise of a report from Dr. Gurule as an indictment against Mr. Marquez's case preparation.  According to Mr. Marquez, Dr. Gurule saw Plaintiff only two times, and Plaintiff had five other healthcare providers who saw and treated Plaintiff significantly more than did Dr. Gurule.  Thus, there is no particular weight that should be given to Dr. Gurule's report as to a difference it would have made in Plaintiff's case, and there is considerable evidence that supports Mr. Marquez's assessment of Plaintiff's case as weak and problematic, both in terms of liability as well and damages.  *See, e.g.,* Doc. 83-2, Ex. B (Marquez's letter to Plaintiff dated September 20, 2013 stating that his case was weak and noting

---

[4] Apparently, Mr. Jacobus was hoping for a ruling favorable to Plaintiff on the enforcement of settlement issue, since he contacted Dr. Gurule just prior to the Court's ruling on that issue, which obviously eliminated the need for an expert for trial.

that there were two witnesses who would testify against Plaintiff and also noting that Plaintiff's previous attorney dropped the case because of weaknesses in the case).

Plaintiff also makes much of Mr. Marquez's failure to attend a large portion of his deposition, but this argument is almost silly. Although Plaintiff makes it sound as though Mr. Marquez almost abandoned him in the middle of the deposition, the actual circumstances turn out to be quite commonplace: Mr. Marquez had another commitment that conflicted with Plaintiff's deposition, and had another attorney, who was an experienced personal injury attorney, fill in for him. Such fill-ins are usual with attorneys who practice in firms, but Mr. Marquez is a sole practitioner. Asking another attorney to take his place at a deposition under those circumstances is quite reasonable, and it is certainly no basis to reduce Mr. Marquez's requested contingency fee.

The docket entries in this case do not support a reduction of the contingency fee, either. There was sufficient activity in the preparation of this case prior to settlement so as to justify the contingency fee award agreed to by Plaintiff when Mr. Marquez agreed to take his case.

C.     Recovery of Costs

Finally, Plaintiff claims that he was overcharged for a portion of the charging lien which charges Plaintiff $535.00 in copy costs for copying his file. It is quite clear that under the terms of the contingency agreement, Plaintiff is responsible for those costs. Evidently, Plaintiff's file was quite voluminous, and there is merit to Mr. Marquez's argument that $535.00 for over a thousand pages of documents is reasonable. Plaintiff disagrees, insisting that he has been charged over $1.00 a page, which does not mathematically line up if his file was in fact a thousand pages.

This copying issue was presented to the Court as one of the earliest disputes in this case, *see* Doc. 75 at 2-4, and there is no need to haggle over the exact number of pages or the cost per page any further. The Court acknowledges that Mr. Marquez spent considerable time and money in order to prepare a copy of his client's file for Plaintiff, but this will be the one issue that the Court will resolve in favor of Plaintiff, if only to have a finality to this matter. The amount of $535.00 in costs is a small fraction of the entire charging lien, to which the Court finds Mr. Marquez otherwise entitled.

**THEREFORE,**

**IT IS ORDERED** that the Court awards the entire amount of fees and costs listed in the Amended Attorney Charging Lien **(Doc. 79)**, in the amount of $22,267.24, *minus* the amount of $535.00 for copying Plaintiff's client file, leaving an award of $21,732.24 to Mr. Marquez from the funds deposited in the Court registry.

**IT IS FURTHER ORDERED** that the Clerk of Court disburse funds in the form of a check to Mr. Marquez in the amount of $21,732.24, after Mr. Marquez provides his name, mailing address and social security or tax ID.[5]

_____
UNITED STATES DISTRICT JUDGE

---

[5] The Court will issue a separate Order pertaining to the funds remaining in the registry ($38,267.76) after allowing for payment to Mr. Marquez.